Our first case for argument today, combined 25-1028 and 25-1064, Spero v. Volkswagen. Mr. is it Lurie? Please proceed. Thank you. Good afternoon, Your Honors. Tom Lurie on behalf of Appellant Spero. We have two separate sets of briefs. One set is on the 029 patent, the other is on the 503 patent, and I'd like to start with the 029 patent issues, which is... Can I just ask you a housekeeping question? So if we were to affirm in the next consolidated cases, the Mercedes-Benz cases, would that moot what is going on with respect to the Volkswagen appeals? To some minor extent, yes. There are certain claims in the 503 patent that are out. There is also overlap between the claims in the two cases, but there are some claims that are not overlapping. So it's a matrix, I guess. Can you identify? I don't want to take too much of your time, but do you have readily available to identify what... The 029 are the same, right? The 029, yes. It's just claim one in the 029, which that's the primary claim, but it's all the claims in the 029 that are relevant here. In the 503 case, there are claims 5, 28, 45, and 68 that we appealed in the VW case that we did not appeal in the Mercedes case. So those claims which relate to the second and third IPR in the 503 Volkswagen case, those claims are no longer relevant here, I guess. In terms of the rest of the overlap, I don't have that at my fingertips. I could find out and provide that for you. Let me follow up on Judge Cunningham's question. In the Spiro versus Mercedes-Benz case, the 1470 case, I understood all the claims of the 503 patent to be at issue in that one. Is that correct? Mr. Angellari is handling that, and I don't know the answer to that, unfortunately. I'm sorry. Okay. But if they did, then there would be. Yes, there would be. My understanding was that those five claims that I mentioned were not at issue in the Mercedes case, but Frank can correct me if I'm wrong about that. All right. Thank you. So, excuse me. I'd like to start with the 029 appeal. And the primary issue here, we had two issues there, but the primary issue is the increasing curve illumination issue. And the issue essentially begins and ends with the board's conclusion here, which is we find that skilled artisans would have understood to use Gotow's control system to determine the desired pattern and intensity, and to use Carlson's control system to produce that desired pattern intensity with LED array and optical system. That's at appendix page 16. There are two issues or two problems with that. First, the board cites no evidence that skilled artisans could do this. And this court has made it clear in several cases, including the Oris Health case that we cited in our briefs, that you can't just say skilled artisans can do it without evidence. And there's no citation to any evidence that skilled artisans had this ability. But also equally fundamental is that this is not an argument that Volkswagen made in its petitions or its reply or in its experts reports. Nowhere, experts declarations, it's nowhere in there. It's not cited by the board, but moreover, it's directly contrary to the record that... Counsel, just to kind of crystallize your dispute. Do you agree that there's no dispute that the combination of Gotow and Carlson collectively satisfy all the claim limitations? If there was a combination that resolved the conflict, but the problem is the conflict exists, and there's no resolution to that. My understanding though is you're saying that you have an issue with the motivation to combine. Correct. But in terms of if we disagree with you that there's issue with the motivation to combine, do you agree that there's no dispute that this combination of Gotow and Carlson collectively satisfy all the claim limitations? All the elements are in those references, yes. But the problem is when you combine them, you have this problem of the conflicting illumination. So going back to the arguments that Volkswagen made in its petition, it said, for example, that a POSA would, and this is page appendix 185 from their petition, a POSA would have also understood that Carlson's directional LED input and control technique would have been combined with Gotow. And they said by simply substituting Gotow's system with Carlson's LED array and control. That was their primary focus. And their expert said that Gotow's light sources and optical control elements are replaced by Carlson's. So when the board says, no, we're going to use all of Gotow's system to do this, there's no foundation for that in the petition or the reply. The reply is silent on this issue. So that's a fundamental problem. The other issue, of course, is that when you look at what Gotow teaches about curve illumination, it teaches that when a curve is coming, it swivels the entire headlamp in the direction of the curve. And that's undisputed. So whatever Gotow's system is doing, it's not doing anything that would solve this problem because the board found that in Carlson, the entire light output shifts. And it also found in the 197 IPR, which is subject of the other appeal, that that means it decreases light, not increases light into the curve. So Gotow is shifting its entire light toward the curve and increasing light into the curve, while Carlson, according to the board's findings, which are undisputed, the entire window, the entire light output is shifted away from the curve. And so there's nothing that says how to, nothing in the petition and even nothing in the board's findings, ultimate findings, is there a way to reconcile those two issues. All right. The other issue we have on the 029 is Claim 21, which unless there's questions about that, I will leave the briefs. All right. Now let me turn to the 503 patent issues. And there we have basically three issues. The first two issues we have relate to a single finding by the board. And this is appendix page 19, where the board is discussing Spiro's argument, which it says it finds unpersuasive because we do not agree that the combination lacks Harber's software, but the contrary one of skill in the art would readily understand that some type of programming would be needed to control the light sources to achieve the benefits Harber's describes. And again, like the 029, there is no citation to any evidence of that. We have a skill in the art just invoked out of the blue with no evidence to support it. And we also have the problem that this isn't an argument that Volkswagen made in its petition or its reply. So, in the briefs here on appeal, didn't the board rely on expert testimony to find that Harber's multiple directional beam segments with differing angles and aims would have provided the Carlson system with a spatial distribution? I think that's a quote from pages A17 to 18 of the board. Yes, that's the hardware side of things. But the problem is when VW made its combinations, it said we're either going to do a software combination or a hardware combination. And in the hardware combination, the only thing they bring over is the curved substrate from Harber's. If you read their petition and you read even in their response on appeal, the hardware they bring over from Harber's is just the curved substrate to do the separation of the segments. And there's no software that's being brought over. And even the board didn't find anything in the hardware implementation about software. Instead, it went over to the software implementation and said, oh, we found software discussed in the software implementation. We're just going to use that argument. But that's not what VW did. In fact, seven times between its petition and its expert report, seven times it said either software or hardware. Now, on appeal, they want to hang their hat on a single word, additionally. In one instance, they said additionally or alternatively hardware or software. But there is no analysis or argument supporting that. And as this court said in Harmonic v. Avid Tech 815 F3rd 1356 at jump site 1363, Harmonic's discussion of these features of the prior artist's conclusory, Harmonic mentioned the feature to the board only once in a single sentence without elaboration. And that's exactly what happened here. But the board rejected this waiver concept. So, I mean, the word additionally hardware was in there. And the board didn't agree with you that this was not fairly before it and raised by the petitioner. So I'm reviewing a board decision on whether this issue was raised, right? No, we did raise this issue. In fact, the board recognizes and that's why it says. I'm not saying you didn't. You're claiming that this issue was not presented to the board by your opponent, correct? We're saying yes, that VW created a world with either you have just software combination or just a hardware combination. Except for the fact that they said additionally hardware. In one place, in one petition, even though earlier in that opportunity to raise this exact argument with the board. No, because the board had said in its, no, because the board had said in its institution decision that we recognize there's a hardware and a software and we're going to exclude the software. So, and then it said in its FWD, we are adopting that statement, that the software is excluded from our analysis. We're only going to look at the hardware implementation. So, all through this proceeding at the PTAB level, this was about a hardware implementation. And so I see I'm running low on my time. But this was about the hardware implementation only. And the only place that additionally has come up is on appeal. They didn't raise additionally down below. They didn't argue, well, we said additionally, we said additionally. That wasn't the issue below. The issue was, is it hardware or is it software? It's one of the two. And that's the way everybody looked at it until the board said, no, we're going to take some hardware software. They don't identify what software they're going to take. They don't explain how it would be done. That's the, that's the fundamental problem. I guess my problem is you don't like the conclusion the board reached. But I review this question of fact for substantial evidence. And that word additionally is there. And so even if the board didn't cite it, I don't see why it isn't substantial evidence for the board's ultimate fact finding. Because it's undeveloped. There's a single word additionally. They want to carry the weight of the entire argument. One word. They don't, in the rest of their section on the hardware implementation, where they transition from software to hardware, they never say a single word about software. They never explain how anybody would, what software would be taken, whether it be hardware software. How do you think the board messed up so badly? Because they wanted to reach a result. They wanted to reach this result that there is obviousness. Again, they don't cite anything. The board doesn't cite anything to support this idea that you can take some arbitrary software. Do you continue that the board is somehow biased and result-oriented when you said they wanted to reach the result that there is obviousness? I think there's some indications of that. In, in the, for example, the. What do you have for that? I'm sorry? What basis do you have for making that argument? Well, for example, in the, in, in this appeal, the 197, I'm sorry, this PTAB decision, they said that, they said specifically that the Carlson device decreases illumination into a curve. Now, in the 029, they ignored that problem. They completely ignored that problem, even though they made a finding, explicit finding, in the 197 IPR, contrary to what they did in the 029. So I think there's some indications that they were, they're attacking for a result. The fact that they don't cite any evidence to support their position is an indication that there's nothing in the petition and nothing in the record to support it. Okay, thank you.  Thank you, your honors, and may it please the court. William Milliken on behalf of Volkswagen. I will be addressing, addressing the appeals from the 503 patent decisions. I'll start out in response to your housekeeping question, Judge Cunningham. My understanding is that all claims of both patents were invalidated in the Mercedes IPRs. And so if the court were to affirm in the Mercedes IPR that there were no claims of Mercedes appeals, that would moot these appeals because all the claims would be canceled. I will focus on the Carlson Harbors issue and the purported change to that argument that was allegedly made in the final written decision. The board did not change the obviousness combination. The board read the petition to be asserting one Carlson Harbors combination that accommodated both Harbors software and its hardware. You can see this in multiple places across the final written decisions. The first one is at appendix 10. I'm happy to provide other sites. The board's interpretation of the petition was correct, and it certainly was not an abuse of discretion, which is the standard that Spiro would have to surmount in order to win on this issue under cases like Sage Products. I want to make a couple points about the record. First, my friend on the other side suggested that we're relying on a single word additionally that was in one of the petitions. That's not correct. Our expert in all three of his expert declarations explained that the software implementation was additive. It was not that the hardware and the software implementations were additive. They were not mutually exclusive. We... Did the board cite any of that? The board said, for example, at appendix 9758, which is in the 335 final written decision, that the petition explains that both the software and the hardware would be accommodated. Is that in the analysis portion or in the portion of the board's decision where they're articulating your views? That is in the analysis provision. I think. Which appeal is it? This is the 1064 appeal. And the site that I provided was appendix 9758. And if you see at the bottom of the first paragraph on that page, the board says, the petition explains that the combination would use Carlson's hardware, but employee harbors lighting scheme that tailors the spatial distribution and in some embodiments colors to a particular scene. So it's incorporating both the hardware, the ability to have differently colored lights,    But that whole thing is prefaced by that's your argument.  But the board goes on to agree with our argument. If you go two pages over to appendix 9760, the board says we find patent owners arguments against the combination unpersuasive and conclude that the petition sufficiently established. One other point that I want to... That's not adopting that specific fact finding. They find patent owners arguments unpersuasive, but they didn't say they found yours persuasive per se, much less that particular one. Well, if you want to look at the 197 final written decision, the board expressly rejected Spiro's argument that the control scheme of harbors would be used, it would not be used in hardware implementation. Spiro said there are these two mutually exclusive combinations. You can't mix and match them. And the board said at appendix 20, we find this argument unpersuasive. The combination contemplates the use of harbors control scheme, which is used in the combination because it is the reason for the combination, along with Carlson's teaching about dimming the portion of the projected light that may cause inconvenience to oncoming drivers. And then it cites the petition. I mean, the board is very clearly stating there, this is the argument that we understand the petition to be making. And that interpretation of the petition is reviewed for abuse of discretion. That's not in this particular FWD, right? That's the other one. Correct. But I think all three of them are consistent on this point in that, to the extent Spiro made this argument across the proceedings that, oh, well, the Volkswagen can't rely on harbors software because the board... Even if there's a shortcoming in the thoroughness of their decision in this case, you think that the Mercedes one, which I know you're not here to argue, but shores up any of those concerns because they did a more thorough job there of articulating their fact findings? No, Your Honor. I was making more of a procedural point that the Mercedes cases, if they are affirmed, would move these cases because all claims would stand canceled. The art used in the Mercedes proceedings is different. I think that the analyses are different. But I think... The 197, which one is the 197 that you're referring to? That is the one of the three IPRs on the 503 patent that Volkswagen filed. One point that I want to make, Spiro clearly understood below that we were relying on both harbors hardware and software. You can see this in several places. For example, in all three POPRs, Spiro said, quote, petitioner proposes combining Carlson with harbors software and or hardware. And tell us exactly which appeal number you're referring to. Of course, this is appeal number 25-1064. And the appendix sites are A-3333, A-8172, and A-10601. Those are all from Spiro's preliminary patent owner responses on the 503 patent. In the 197 POR, this is at appendix 39-34, Spiro recognized that both harbors array, i.e. the hardware, and Carlson and harbors control software would be included in the combination. In the patent owner's server replies, you can find this at appendix 6293. And 11-145, the Spiro characterized Volkswagen's arguments as interconnected software and or hardware arguments. And then finally, in another one of the patent owner's server replies, at appendix 63-10, Spiro characterized a combination as Carlson software plus harbors software plus harbors LEDs, i.e. its hardware. And our expert was very clear at his deposition that the hardware could be added to the software. You can find that at appendix 49-44-45, and I direct you in particular to page 37, lines 5 through 9. So the board, Spiro itself understood that this was the combination we were asserting. The board certainly did not abuse its discretion in reaching that conclusion. And Spiro does not even acknowledge let alone surmount that abuse of discretion standard of review. Now, would you or would your colleague talk about the conflict or alleged conflict that opposing counsel said there was between the two pieces of art? I will defer to my colleague, Mr. Crudo, on that one, because opposing counsel raised that in the context of the 029 patent IPR. And so I will let him handle that one. If the court has further questions on the 503 patent IPR, I'm pleased to answer them, but otherwise I'll... Okay, thank you. Thank you.  Good afternoon, your honors, and may it please the court. I will briefly address the 029 patent and the alleged conflict issue. Spiro argues that the board avoided this alleged conflict in the prior arts control strategies by changing our obviousness combination, and that's wrong. To start, there is no conflict, and in fact, the board made fact findings that undermine the entire premise of their conflict argument, and Spiro has not appealed to that. Those fact findings. At appendix 13, the board found that Carlson is not limited to a single operating mode that must shift light away from a curve. Rather, crediting our experts' testimony, the board found that Carlson's headlight is, quote, capable of adapting its beam shape to myriad possible situations and can shift left or right as may be desired to accommodate a curve. That's at appendix 12. Those fact findings culminated at appendix 21, where the board found that Carlson can be used for, quote, directing light in the direction of road curvature, which is exactly what Gouteau is. And again, Spiro doesn't appeal any of those findings. They establish that Carlson is versatile enough to accommodate Gouteau's curve illumination strategy. There is no conflict here. If there were any ambiguity on that score, I think it's resolved by Spiro's own dependent claims, 8, 19, and 30, which require both curve illumination and glare reduction. And yet the specification doesn't say anything about an alleged conflict. That's because there is none. Real quickly, just addressing my colleague on the other side's statement that the board changed our combination. That, too, is false. We argued, for example, at appendix 176 in the petition that Gouteau's map data would be used as a control input to predict and adjust illumination direction. We also made that clear at appendix 184. And in reply, we said Carlson creates a light beam when using Gouteau's control strategy to aim light in the direction towards a curve. That's exactly what the board said at appendix 16. You would have used Gouteau to determine the desired light pattern and intensity and to use Carlson's control system to produce the desired curve. So the board adopted the combination exactly as we presented it. It didn't use the exact words, but it didn't need to. The substance is the same. If there are no further questions, Your Honor, I will see the remainder of my time. Thank you. Thank you. Let me start with what was just argued about Gouteau and map data. That was with respect to seeing the curve ahead of actually entering the curve. So the map data has nothing to do, Gouteau's map data, which is what he's talking about, has nothing to do with the illumination strategy. And again, the board was very clear that when Carlson adapts its light, it moves the entire light. All the light goes in one direction. Unlike where the counsel is talking about, when you're trying to dim for glare, then it will adjust for glare. But when it's going to a curve, the board specifically found that it moves the entire light, all the light. Final point because we're out of time. Yeah, I'm sorry. So let me turn to the other appeal real quick. I mean, I just looked at the deposition transcript that was cited by counsel and their expert said, I stated the hardware combination is using a light source from Thominet, which is a different reference. I'm sorry. This is appendix page 4945. And I'm on page 39 of the deposition transcript starting at line four. Now, Thominet was a different reference that isn't on appeal, but they're making generally the same arguments. So the light source, it's using light source from Thominet that being placed on the curved surface 12 from harbors. And to replace that flat surface of beam, that, again, is relatively, is alternatively and additively the hardware implementation. So when they were talking about alternatively and additively, we're just talking about the hardware implementation doing that. Okay. Thank you. Thank you, counsel. Thank you, counsel. These two cases are taken under submission.